UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| NICK BRUNES, | ) | |
| (Social Security No. XXX-XX-4583), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:06-cv-183-RLY-WGH |
| | ) | |
| MICHAEL J. ASTRUE, COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM DECISION AND ORDER**

**I.  Statement of the Case**

Plaintiff, Nick Brunes, seeks judicial review of the final decision of the agency, which found him not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act").  42 U.S.C. §§ 416(i), 423(d); 20 C.F.R. § 404.1520(f).  The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Plaintiff applied for DIB on February 9, 2004, alleging disability since December 27, 2000.  (R. 63-65).  The agency denied Plaintiff's application both initially and on reconsideration.  (R. 31-39).  Plaintiff appeared and testified at a hearing before Administrative Law Judge George Mills ("ALJ") on December 20, 2005.  (R. 382-425). Plaintiff was represented by an attorney; also testifying was a vocational expert.  (R. 382).

On January 26, 2006, the ALJ issued his opinion finding that Plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform a significant number of jobs in the regional economy. (R. 16-23). The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R. 5-7). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a Complaint on November 13, 2006, seeking judicial review of the ALJ's decision.

## II.  Statement of the Facts

### A.  Vocational Profile

Plaintiff was 45 years old at the time of the ALJ's decision and had a high school education. (R. 22). His past relevant work experience was that of a motorcycle mechanic, a dairy helper, and a local truck driver; all of these jobs were medium or heavy skilled jobs. (R. 21).

### B.  Medical Evidence

Because Plaintiff was only insured for DIB through December 31, 2001, the majority of Plaintiff's medical records after that date will not be included here. The medical evidence relevant to Plaintiff's condition prior to December 31, 2001, are as follows.

In August 2000, Plaintiff sustained a work-related back injury. (R. 138). Magnetic Resonance Imaging ("MRI") showed a "mild" left sided herniated nucleus pulposus at L5-S1 approaching Plaintiff's left S1 nerve root and mildly compressing his

left neuroforamen, but there was no evidence of gross involvement of the adjacent nerve roots or thecal sac. (R. 138). These images also revealed mild focal right lateral disc protrusion and endplate osteophytes at L4 mildly compromising his right neuroforamen. (Tr. 138).

An MRI performed on September 15, 2000, again showed mild right lateral endplate osteophyte at L4-5 possibly involving Plaintiff's right L4 foraminal nerve root, as well as a mild left paracentral disc bulge and osteophyte at L5-S1 approaching the exiting left S1 nerve root sleeve and mildly compromising the medial aspect of the left neuroforamen. (R. 139). There was no evidence of subluxation with flexion or extension. (R. 139).

Notes from Advanced Rehabilitation of Jasper, Inc., dated December 6, 2000, indicate that Plaintiff had the ability to: occasionally lift 35 pounds from floor to waist and frequently lift 15 pounds; occasionally lift 20 pounds from waist to overhead and 15 pounds frequently; and perform horizontal lifting of 40 pounds occasionally and 20 pounds frequently. (R. 140-41). Plaintiff was further determined to be able to push 51 pounds frequently and 26 pounds continuously and pull 54 pounds occasionally and 27 pounds continually. (R. 140-41). No other limitations were assigned.

On May 3, 2002, nearly 17 months after Plaintiff was last seen for back problems, Plaintiff sought medical attention after he fell ten feet. (R. 147). Plaintiff reported to Gregory Fletcher, M.D., that he had never fully recovered from his back injury two years prior. (R. 147). Dr. Fletcher noted that, in addition to chronic back pain, Plaintiff was

3

obese, weighing 298½ pounds.  (R. 147).  Plaintiff was prescribed Ibuprofen and OxyContin for pain and Valium for muscle spasms.  (R. 147).

On July 11, 2002, Plaintiff was doing "pretty well" on his medication regimen.  (R. 145).  Plaintiff was counseled regarding the importance of weight loss and had lost eight pounds since his last visit.  (R. 145).

On August 8, 2002, Dr. Fletcher noted that Plaintiff reported that his morning dose of OxyContin was wearing off at about 4:00 p.m., which he noted was fairly consistent with his "being on his feet and working around the house."  (R. 144).  Plaintiff reported that his medicines were keeping him fairly pain free.  (R. 144).  Plaintiff denied numbness or tingling of his extremities but did have some pain radiating down into his buttock and into his hamstring.  (R. 144).

In September 2002, Plaintiff sought medical assistance at the Veterans Affairs hospital.  (R. 198-99).  Plaintiff continued to report pain and the need for medication; however, he remained fairly active and was able to cook and enjoyed making bread.  (R. 189, 194).

On February 3, 2003, Plaintiff had diffuse tenderness over his lumbar spine and paraspinatus muscle, but no obvious spasms and no focal neurological deficits.  (R. 183).  At that time, Plaintiff reported that he was busy "setting a new trailer in."  (R. 180).  Plaintiff was regularly transporting family members to doctors, shopping for them, delivering supplies to some of their homes, and doing almost all of the cooking.  (R. 187, 189).  X-rays of Plaintiff's lumbosacral spine on February 7, 2003, showed tiny or

minimal anterior spurring at the superior endplate at L4.  (R. 152).  Plaintiff's disc spaces were normal.  (R. 152).

### III.  Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997).  This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility.  *Richardson,* 402 U.S. at 399-400.  Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner.  *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999).  Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits.  *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

### IV.  Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that he suffers from a "disability" as defined by the Act.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or

5

which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

## V. The ALJ's Decision

The ALJ concluded that Plaintiff was insured for DIB from his alleged onset date (December 27, 2000) until December 31, 2001,[1] and that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 22). The ALJ continued by finding that, in accordance with 20 C.F.R. § 404.1520, Plaintiff had two impairments that are classified as severe: (1) degenerative disc disease of the lumbar spine; and (2) obesity. (R. 22). The ALJ also found one non-severe impairment: depression. (R. 22). The ALJ concluded that these impairments did not meet or substantially equal any of the

---

[1]Because Plaintiff is only insured through December 31, 2001, he must demonstrate that he was disabled before his insured status expired.

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 23). Additionally, the ALJ opined that Plaintiff's allegations regarding the extent of his limitations were not fully credible. (R. 23). Consequently, the ALJ concluded that Plaintiff retained the RFC for a limited range of light work that included lifting/carrying 20 pounds occasionally and ten pounds frequently with a sit/stand option; no climbing of ladders, ropes, or scaffolds; occasionally climbing ramps or stairs, occasionally balance, stoop, kneel, crouch, and crawl; and avoiding vibrations and hazards such as heights and moving machinery. (R. 23). The ALJ determined that Plaintiff could not perform his past work. (R. 23). The ALJ opined that Plaintiff retained the RFC for a significant range of light work and that Plaintiff could perform a significant number of jobs in the regional economy. (R. 23). The ALJ concluded by finding that Plaintiff was not under a disability. (R. 23).

## VI.  Issues

The court has examined Plaintiff's pro se brief and concludes that Plaintiff has essentially raised four issues. The issues are as follows:

1. Whether Plaintiff received inadequate representation at his hearing.
2. Whether the vocational expert's testimony was accurate.
3. Whether the ALJ's credibility determination was patently wrong.
4. Whether remand was necessary for consideration of new evidence.

**Issue 1:  Whether Plaintiff received inadequate representation at his hearing.**

Plaintiff alleges that he is entitled to a new hearing because he was not properly

represented at his initial hearing. What was specifically troubling to Plaintiff was that he believed his counsel had not contacted Randall Oliver, M.D. As noted by the Seventh Circuit, there is no constitutional right to counsel at a hearing for social security benefits. *Smith v. Secretary of Health, Ed. and Welfare,* 587 F.2d 857, 660 (7th Cir. 1978). But, the quality of representation may be the basis of remand. *Id*. (citing *Arms v. Gardner,* 353 F.2d 197 (6th Cir. 1965)).

In Plaintiff's case, however, Dr. Oliver did not begin to treat Plaintiff until August 4, 2003, nearly two years after Plaintiff's insured status expired. (R. 177). And, the record clearly indicates that the ALJ considered Dr. Oliver's treatment notes. (R. 19). The records from Dr. Oliver that the ALJ referenced do not address Plaintiff's condition as of December 31, 2001. Furthermore, Plaintiff has provided no indication that there are additional records from Dr. Oliver that would reflect upon Plaintiff's condition before his insured status expired. Because Plaintiff has provided no evidence from Dr. Oliver that reflects on his condition prior to December 31, 2001, the court concludes that Plaintiff's claim that he received inadequate representation fails.

**Issue 2: Whether the vocational expert's testimony was accurate.**

Plaintiff also challenges the vocational expert's testimony claiming that "[m]yself, anyone in my, or the State Employment office[,] have ever heard of the 3000 jobs your Prosecutor mentioned at my last hearing." (Plaintiff's Brief in Support of Complaint at 1). However, the ALJ referenced the *Dictionary of Occupational Titles* ("DOT") and found that Plaintiff could perform jobs as a cashier and packager. These two job

categories are plainly part of the DOT. *See Dictionary of Occupational Titles* available at www.occupationalinfo.org (last visited October 18, 2007). Substantial evidence, therefore, supports the ALJ's decision.

**Issue 3: Whether the ALJ's credibility determination was patently wrong.**

Next, the court concludes that Plaintiff also found fault with the ALJ's credibility determination. Specifically, Plaintiff stated "I am still in pain 24/7. I can not sit, stand, or walk for any lengty periods. If I do things around the home I'm bed ridden from 2-4 days." (Plaintiff's Brief in Support of Complaint at 1).

An ALJ's credibility determination will not be overturned unless it is "patently wrong." *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000). However, whether the decision is wrong depends upon how closely the ALJ follows SSR 96-7p, the regulation promulgated by the Commissioner to assess and report credibility issues. SSR 96-7p states that there is a two-step process that the ALJ engages in when determining an individual's credibility, as follows:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms. If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic

>work activities.
>
>>Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, *the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.* This requirement for a finding on the credibility of the individual's statements about symptoms and their effects is reflected in 20 CFR 404.1529(c)(4) and 416.929(c)(4). These provisions of the regulations provide that an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.

Social Security Ruling 96-7p, 1996 WL 374186 (S.S.A.) *2(emphasis added)(footnote omitted). SSR 96-7p further provides that the ALJ's decision regarding the claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id*. Moreover, 20 C.F.R. § 404.1529(c)(3) states that when a claimant's subjective individual symptoms, such as pain, are considered, several factors are relevant including: (1) the individual's daily

activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

In his opinion, the ALJ provided the following rationale for finding Plaintiff's testimony not fully credible:

> After a thorough examination of the claimant's assertions regarding the intensity, persistence, and limiting effects of his alleged symptoms, and all other pertinent evidence within the scope of Social Security Ruling 96-7p and 20 CFR § 404.1529, I find that his statements concerning the severity and extent of his alleged ongoing exertional and nonexertional limitations and their impact on his ability to work are not fully credible. Although the claimant had subjective complaints of pain during the relevant period, the objective medical evidence contained in the record does not support the degree of limitations alleged. MRI's obtained during the relevant period revealed no more than "mild" findings with no evidence of significant nerve root compression (*See,* Ex. 2F & 3F). Based upon the evidence available at that time, the claimant was determined to have only 5% disability by worker's compensation (*See,* Ex. 7F, p. 27). Furthermore, radiographic images obtained in February 2003, over a year after the claimant's date last insured for benefits, revealed only "tiny" or "minimal" anterior spurring at the superior end plate at his L4 spinal level. The claimant's disc spaces were noted to be "normal" (*See,* Ex. 7F, p. 3). The claimant's activities of daily living are also inconsistent with the degree of pain alleged, as he has been able to cook on a regular basis, perform light housework and repairs, run errands for the elderly in his community, use his boat, and perform activities such

as set in a trailer (*See,* Exs. 4E; 6E; 7F, pp. 28 & 40 & 9F, p. 108).

(R. 20).

These findings by the ALJ were in accord with SSR 96-7p and 20 C.F.R. § 404.1529.  The ALJ clearly articulated why Plaintiff's complaints of debilitating pain were not fully credible.  The ALJ reasonably noted that Plaintiff's activities of daily living and the medical evidence could not be reconciled with his complaints of pain.  *See Books v. Chater,* 91 F.3d 972, 979 (7th Cir. 1996)(approving of ALJ's decision that "testimony concerning [Plaintiff's] disabling pain and physical limitations [is] untenable when contrasted with his reported daily activities and the relevant medical evidence. . . .").  And, the ALJ credited Plaintiff's complaints to the extent they were supported by the medical evidence, limiting Plaintiff to light work only with a sit/stand option and no exposure to vibrations.  Hence, nothing about the ALJ's credibility determination was patently wrong, and the ALJ's decision on this matter is affirmed.

**Issue 4:  Whether remand was necessary for consideration of new evidence.**

Finally, Plaintiff alleges that he is entitled to remand for consideration of new evidence.  Specifically, Plaintiff explained that "[w]e finally have new MRI pictures of my spine.  I am do [sic] to see the nero surgen [sic] on 8-15-2007."  (Plaintiff's Brief in Support of Complaint at 1).

The court may consider new evidence in some instances in order to determine if remand is warranted.  42 U.S.C. § 405(g).  Pursuant to sentence six of section 405(g), if Plaintiff can provide new evidence that is material and can demonstrate good cause for

why the evidence was not submitted during the previous proceedings, remand may be appropriate. *Id*. New evidence is not "material," and, therefore, not worthy of remand, unless it relates to the relevant time period. New evidence is also only relevant if the evidence was available on or before the date that the ALJ rendered an opinion. *Perkins v. Chater,* 107 F.3d 1290, 1293-94 (7th Cir. 1997)(citing 20 C.F.R. § 404.970(b)); *Anderson v. Bowen,* 868 F.2d 921, 927 (7th Cir. 1989).

Here, the alleged new evidence is not material. An MRI and an exam by a neurosurgeon that does not take place until 2007 is not material to Plaintiff's condition on December 31, 2001, when his insured status expired. These pieces of medical evidence were also not available when the ALJ rendered his opinion. Because the alleged "new evidence" is not material, remand is unwarranted.

## VII.  Conclusion

Plaintiff did not receive inadequate representation at his administrative hearing. Also, the vocational expert's findings are supported by substantial evidence. Additionally, the ALJ's credibility assessment is not patently wrong. Finally, Plaintiff is not entitled to remand based on the existence of new evidence. The final decision of the Commissioner is, therefore, **AFFIRMED.**

**SO ORDERED** this 26th day of March 2008.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

13

Electronic Copy to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov


Copy to:

Nick Brunes
12733 Yellowbanks Trail
Lot #2 South
Dale, IN  47523